BRY-BLOCK MERCANTILE COMPANY v. MRS. J. M. PROCTOR.

Western Section. February 13, 1931.

Petition for Certiorari denied by Supreme Court, May 2, 1931.

Sivley, Evans & McCadden, of Memphis, for plaintiff in error.

W. G. Cavett and H. S. Buchanan, of Memphis, for defendant in error.

OWEN, J. Mrs. J. M. Proctor instituted a suit in the Circuit Court in Shelby County to recover damages against the Bry-Block Mercantile Company, Hays Flowers, Jack Dillon and O. L. Wooley. The declaration contained three counts. The first count was for malicious prosecution. The second and third counts alleged slander.

It appears that there has been two trials of this cause. At the first trial, the second and third counts were dismissed, a non-suit was taken as to Hays Flowers and a judgment was rendered in favor of the plaintiff against the other three defendants for $7,500. From this judgment there was an appeal to this court, and this court at its January term, 1929, reversed the judgment in favor of the plaintiff, writ for certiorari was denied by the Supreme Court March 1, 1930.

The opinion of this court was delivered by Mr. Justice Senter and appears in Vol. 10, page 251 of the Reports of the Court of Appeals. The cause was reversed and error in the trial court's charge to the jury. Upon the remand for a second trial there was a verdict in favor of the plaintiff against the defendants, Bry-Block Mercantile Company and O. L. Wooley, for $5000 actual damages, and $1000 punitive damages. A verdict was rendered in favor of the defendant, Jack Dillon.

Upon a motion for a new trial, the Circuit Court suggested a remittitur of the entire amount allowed for punitive damages and rendered a judgment for $5000 as compensatory damages. The two defendants have appealed in the nature of a writ of error to this court and have assigned errors.

The plaintiff has filed the record for error and insists that the court erred in ordering any remittitur. The defendants have assigned eleven errors.

By the first and fourth errors it is insisted that there is no evidence to support the verdict and that the court erred in overruling the motion of the defendants for peremptory instruction made at the conclusion of all of the proof, because (a) there is no evidence of any malice; (b) there is no proof of the lack of probable cause;

(c) the defendants acted upon the advice of counsel, which advice was fairly and honestly sought by the defendants and was given upon a full and fair disclosure to the attorney of all the facts in the case, and the prosecution was instituted on the advice of the attorney.

The second assignment is, that the verdict is contrary to the weight or the preponderance of the evidence. This assignment is overruled because this Court does not weigh the evidence passed on by a jury to ascertain where the weight or preponderance lies.

The third assignment goes to the excessiveness of the verdict.

The fifth and sixth assignments complain of the following excerpts in the Court's charge:

"Now, under our law in a case where the plaintiff says: alleges that the defendants, or defendant, has done them a malicious wrong, then the jury finds that is so, then the law permits the jury in the jury's discretion to award, if they desire, an additional amount further than compensatory damages, damages known as punitive damages, damages by way of punishment, damages that would punish the defendants and deter them or persons in the like situation from the commission of like offenses.

"Now in this case the plaintiff says that they acted with malice at the time, and if you find that the defendants, or either of them, acted with malice, then you may in your discretion award punitive damages in addition to compensatory damages. But if you find that the act was not malicious, why then you can't exercise that discretion and allow that character of damages; and since that is a question, gentlemen of the jury, in which you have got to find, if you find for the plaintiff, that it was maliciously done, then the punitive damages, if you award any, is a matter of discretion with you." . . .

"It is the law, gentlemen of the jury, that you may consider the advice of counsel as negativing the existence of malice; and the law is that if defendant in an action for malicious prosecution commenced the prosecution for which he is sued in pursuance of the advice of counsel, that establishes existence of probable cause, and as a matter of law entitled the party sued to complete immunity from damages, provided such advice was honestly sought and all of the material facts relating to the case, as ascertained or ascertainable by due diligence, were presented to counsel."

The remaining assignments allege that the Court should have charged five special requests seasonably offered by the defendants.

It is plaintiff's insistence that what this Court said, as to the former appeal and as reported in Vol. 10, page 660 of the Reports of this Court, is the "law of this case;" that the same question is

now made by assignments one and four as were made on the former appeal and the facts in the second trial being substantially the same as at the first trial establishes what is known in the law books as the "law of the case," this Court having held on the former appeal that a directed verdict should not have been entered. Counsel for plaintiff cite the following authorities in support of their contention:

Under the law as enacted in 1857-58, Chapter 6, which appears as Sec. 3178 of the Code of 1858, Sec. 3890 of the M. & V. Code, and Sec. 4906 of Shannon's Compilations, it is provided as follows:

"Transcript.—And if a cause be remanded, upon being brought up again for correction of errors, the transcript or the record previously sent up, together with the transcript of the subsequent proceedings in the court below, constitute the full record."

Counsel also rely upon the case of Memphis City Bank v. Smith, 110 Tenn., 337, 75 S. W., 1065.

Counsel for the defendant, in answer to the insistence that this Court is bound by its former opinion rely upon Bynum v. Apperson, 9 Heiskell, 632, where the Court held as follows:

"On a former trial of this case on appeal, reported in 5 Col., 341, the opinion, reversing the case, holds the law different from that we have laid down, but we cannot and will not assent to the view there expressed. The doctrine of a former adjudication can have no application to this case, as it was a simple reversal of the judgment of the court below, for reasons therein stated; but no judgment was given for the one party or the other, except that of reversal, and what the law fixed as a consequence, the costs of this Court. The judgment of reversal is conclusive that the case was reversed, but of nothing more. Under this judgment the case was sent back for a new trial, but on that trial a new case might have been made, new evidence introduced, and entirely different questions presented. We are no more bound by that opinion of the Court, as to the law laid down, than in any other case, between other and different parties. The rule in a Chancery case would be different, where the decree made could settle the rights of the parties upon the facts of the record."

We are of the opinion that the authorities relied on by plaintiff are not controlling in the instant case. In the authorities cited by plaintiff, the principle announced was that the adjudication in the former litigation is conclusive in the subsequent litigation on all questions that were raised or could have been raised between the same parties in the prior litigation. What this Court did was to hold that all the facts presented in the cause should have been sub-

mitted to a jury. We quote from Judge Senter's opinion, at the former hearing as follows:

"It appears that the plaintiff, Mrs. J. M. Proctor, had been employed for a considerable time in the silk underwear department of the Bry-Block Mercantile Co., in Memphis and at the time of the incident out of which this suit arose, she was the assistant manager of the silk underwear department. She had been employed by the defendant, Bry-Block Mercantile Co., for about seven years, beginning as a saleslady, and was gradually promoted to the position of assistant manager of the department. The 'Bry-Block Mercantile Co., operated a large department store in the City of Memphis, and was generally referred to as Bry's, or New Bry's or the Bry-Block Mercantile Co., but its corporate name was "Bry-Block Mercantile Co., Inc." This concern had many various departments, and numerous employees, managers, superintendents, etc. On January 24, 1927, the defendant, O. L. Wooley who was at that time the assistant superintendent in the employ of Bry-Block Mercantile Co., and also as a part of his duties served as a kind of house detective, received information from one of the lady employees in the store, that certain irregularities and petty thefts were being committed by Mrs. Proctor. It appears that this lady got her information as to these irregularities from other young ladies working in the department under Mrs. Proctor. Upon receiving this information, Mr. Wooley had several of the young ladies working in the department to come to his office where he interviewed them separately, and from them obtained written statements relative to certain acts of Mrs. Proctor. The substance of all these statements was that, a Miss Henderson who was employed in the bakery department as a saleslady, came to the silk underwear department ostensibly to purchase a lady's nightgown; that she did not have any package of any kind with her at the time, and after a selection was made Mrs. Proctor had one of the salesgirls in the department to make out a check on the usual form provided, which showed the nightgown purchased at the price of $2.98, and on the same check was written one nightgown, $2.98, returned, or exchanged. Upon these statements having been signed by several of the salesladies in the department, who claimed to have witnessed the transaction and to have observed that no purchase was actually made, but that the nightgown had been given to Miss Henderson by Mrs. Proctor, and the ticket or check for the sale was so made as to have it appear that the nightgown had been purchased and exchanged, Mr. Wooley sent for Miss Henderson and interviewed her with reference to the transaction, and Miss Henderson ad-

mitted that she had not purchased the nightgown, but stated that she had given to Mrs. Proctor bread and rolls from the bakery department, and that when she went to the silk underwear department, she told Mrs. Proctor about the price of gown that she desired to purchase, but Mrs. Proctor showed her a more expensive gown, and when she went to pay for the same Mrs. Proctor declined to take the money but made up the ticket, or had the same done, by another lady who worked in the department, so as to have it appear that a nightgown had been exchanged, and gave to her the nightgown in question. Miss. Henderson made a written statement and signed the same disclosing the nature of the transaction.

After business hours, Mr. Wooley called Mrs. Proctor and requested that she go with him to the offices of defendants Flowers and Dillon, who it appears conducted a private detective agency for four of the large department stores in Memphis, and also a retail merchants agency, and at the time told her that he wanted her to go with him for the purpose of discussing irregularities in her department. The offices of Flowers and Dillon were located in the Chamber of Commerce Building. There is some conflict in the evidence as to what occurred at the time in the offices of Flowers and Dillon, but it does appear that the matter of the irregularities was discussed with Mrs. Proctor, and she was no doubt closely questioned by Mr. Dillon and Mr. Wooley with reference to the nightgown incident and probably other apparent irregularities. Mrs. Proctor at that time denied that she was guilty of any wrong doing or that the transaction was irregular but claimed that a proper exchange of merchandise had been made. On the following morning, Mr. Wooley went to the law office of Mr. Williams to advise with him about the incident. It appears that Mr. Wooley had with him at the time the written statements signed by four of the ladies interviewed by him, and also a number of tickets signed by Mrs. Proctor and submitted these written statements and these several tickets to Mr. Williams. He also told Mr. Williams at that time that Mrs. Proctor had been interviewed in the offices of Flowers and Dillon, and that she had denied that she was guilty of any wrong doing. After examining the written statements of the salesladies in the department and the written statement of Miss Henderson, and also the tickets or checks, and especially the check covering the nightgown, Mr. Williams, who was the regular attorney for the Bry-Block Mercantile Co., advised Mr. Wooley that Mrs. Proctor was guilty of larceny of the nightgown, and proceeded to write a written opinion to that effect and advised the prosecution of Mrs. Proctor on that account. This letter

written by Mr. Williams, as the attorney of Bry-Block Mercantile Co., is in the following language:

"January 26, 1927.

"Bry-Block Mercantile Co.,
"Memphis, Tennessee.
"Gentlemen:
    "In re: Case of Mrs. Proctor.
    "I have read the statements dated January 25, 1927, made by Miss Elizabeth Henderson, Miss Juanita Georgie Friddel, Mrs. Lillian Estelle Pearse, and Miss Flora Mae Sanford Taylor; and in my judgment, Mrs. Proctor is clearly guilty of petty larceny or fraudulent breach of trust on January 24, 1927, of one gown of the value of two dollars ninety-eight cents, and referred to in sales check number 2529-40, and also of many similar transactions.
    "I have picked out this one item because it is definite and may be used as the basis of the prosecution.
    "In respect to this item, Miss Friddel states:
    " 'On January 24, I know that a lady who is employed in Bry's Bakery Department came into the department and was approached by Mrs. Proctor, and that she did not have in her possession any package or merchandise to be returned. She purchased from Mrs. Proctor one gown valued at two dollars and ninety-eight cents. Mrs. Proctor wrote out the sales check on book 2529, check No. 40. This check read, "one gown two dollars and ninety-eight cents, one gown returned, two dollars and ninety-eight cents." The package was wrapped and inspected by me.'
    "Miss Taylor states:
    " 'On January 24, 1927, a young lady came into the department who I knew to be employed in the bakery department at the New Bry's. I know that when this lady entered the department she did not have a package in her possession. She was approached by Mrs. Proctor, and after having been shown a number of garments, she made her selection, which was a voile gown. She took from her purse some money and offered to pay Mrs. Proctor for the gown, Mrs. Proctor saying to the customer that this is an even exchange. Mrs. Proctor was making out the sales check when the customer offered her the money. She wrote this sales check on book 2529, check 40, to read, "one gown two dollars and ninety-eight cents. One gown returned two dollars and ninety-eight cents." She then came to me and said, "Here, Taylor, sign this exchange." I hesitated in signing this, but I could not say anything at that time, as I was busy with a customer.'

"The above three witnesses do not name the 'customer' but Elizabeth Henderson, who states that she is employed in the bakery department, says that she is the party. Miss Henderson states:

" 'On January 24 I went to the underwear department, third floor, and told Mrs. Proctor I wanted to look at some gowns. Mrs. Proctor went to the counter, picked one out, orchid color, two dollars and ninety-eight cents, and asked me how I liked it. I told her I did not care to pay over two dollars. She said: "That is alright," and made out a check for two dollars and ninety-eight cents and then wrote on the check "one gown returned two dollars and ninety-eight cents." I offered Mrs. Proctor money for the gown. She said: "That is alright, even exchange." On her way to the desk she had one of the girls sign the slip, even exchange. The package was wrapped and handed to me by Mrs. Proctor.'

"You will note that the sales check referred to has Miss Taylor's name signed to it.

"I also understand that Mrs. Proctor denied her guilt. However, I am of the opinion from these statements submitted to me that she is unquestionably guilty.

"Yours very truly,

"Auvergne Williams."

"There was some conflict in the evidence as to whether Mr. Wooley acted solely on the advice of counsel in having the warrant issued and served. Under the evidence of plaintiff it appears that Wooley sought to have a further conference with plaintiff, and sought to have her again accompany him to the offices of Flowers and Dillon, and as she claimed, to undergo further grilling and humiliation, and that upon her refusal to go again with him to these offices, he showed some anger, and hurriedly went to the office of the Justice of the Peace and procured her arrest on the warrant. There is other evidence in the record that supports plaintiff's statement on this subject. The deputy sheriff who served the warrant stated that Mr. Wooley, when he came to the Magistrate's office, demanded prompt action in making the arrest and accompanied him to the building on Main Street where plaintiff had gone to consult her lawyer. This would constitute some evidence of malice resulting from the refusal of plaintiff to again go with Wooley into another unpleasant conference about the matter. We think it clear from the record that a fair disclosure of all the facts in possession of Wooley was made to Mr. Williams, the attorney, at the time he sought Mr. Williams' advice. He may not have detailed all that occurred in the conference between plaintiff

and Wooley and Dillon on the afternoon preceding in the offices of Flowers and Dillon, but he did inform Mr. Williams that the plaintiff denied her guilt. This was all that was material for him to disclose to Mr. Williams with reference to the conference. He delivered to Mr. Williams the signed statements of the several salesladies working in the department with plaintiff and also the signed statement of Miss Henderson, with whom the alleged illegal transaction occurred. If nothing more appeared, we think Mr. Wooley would have been warranted in acting upon the advice of Mr. Williams in having the warrant for the arrest of plaintiff issued. But the fact that Wooley sought a further conference with plaintiff and sought to have her go again to the offices of Dillon to be further interrogated with reference to the transaction, would afford some basis for an inference that Wooley was not entirely satisfied to act on the advice received by him from Mr. Williams, and that he also became angered at the attitude of plaintiff in refusing to go again with him to Dillon's office to be further interrogated."

In the instant case it appears that Mr. Hays Flowers, a witness at the former trial, had died and his evidence was not read. Mrs. Kerns, a witness for the plaintiff, had died, her evidence as given at the first trial was read to the jury. Three witnesses who testified for the defendant at the former trial were not examined on the second trial but their evidence was cumulative and in addition to facts testified to by witnesses for the defendant at both trials. One of plaintiff's main witnesses in the first trial was known as Mrs. P. M. Bierback, in the instant trial she is designated as Mrs. P. M. Biassoat. We think that this witness' name was misspelled by the stenographer or court reporter in one instance. She is the same witness.

At the second trial, the defendant, Wooley, testified that he was acting under orders of one Mr. Landry; that Landry was the General Superintendent of the Bry-Block Mercantile Company. Wooley further testified that after he had been advised by Mr. Williams, the attorney, he returned to the Bry-Block Store and informed Mr. Landry as to Mr. Williams' advice and that thereupon Mr. Landry directed that the prosecution be commenced.

The defendants insisted that at the time Mr. Landry, the General Superintendent, made the decision, acting on the advice of Mr. Williams, that the prosecution should be made, they had probable cause therefor and acted without malice. Though Mr. Wooley thereafter attempted to interview Mrs. Proctor he never received any other or further information, so that the existence of probable cause remained and thereafter there existed the lack of malice.

Mr. Landry did not testify. On cross-examination Wooley was asked why he did not relate the instructions he received from Landry in his testimony given at the former trial and his answer was; he was not asked about it.

In F. W. Woolworth Co. v. Connors, 142 Tenn., page 681, our Supreme Court said:

"In considering the defense of probable cause the question of the guilt or innocence of the defendant in error is not necessarily involved. She may have been entirely innocent, and still the plaintiff in error could have relied upon this defense, if properly made out.

"On this point the court of civil appeals very properly says:

"'As to the first point, the law as to reasonable or probable cause is defined to be such a state of facts in the mind of the prosecutor as would lead a person of ordinary caution and prudence to believe, or entertain an honest or strong suspicion, that the person is guilty. It does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution. In order to maintain an action for malicious prosecution, it is very clear that the plaintiff must aver and prove that the suit complained of was commenced and prosecuted without reasonable or probable cause, and that it was malicious. The warrantlessness of the suit may, in many instances, be so obvious as that malice may be inferred from it. The question of probable cause applies to the nature of the suit, and the point of inquiry is whether the defendant had probable cause to maintain the particular suit upon the existing facts known to him.' Newell on Malicious Prosecutions, 252.

"In Kelton v. Bevins, Cooke, 90, 5 Am. Dec., 670, Judge Overton said: 'The public interest is concerned that offenses should not go unpunished. It is no test of the impropriety of such prosecutions that defendants are acquitted. The true and legal principle is, had the prosecutor ground to think that a felony had been committed, with the information he possessed at the time of the commencement of the prosecution? If he had, he ought not to be subject to damages in this action.' . . .

"To sustain an action for a malicious prosecution, there must not only be malice, but a want of probable cause. In the absence of either of these requisites, the action falls to the ground, hence, the want of probable cause for a prosecution is the test of this action. Though malice exists, if in the estimation of a rational and dispassionate mind there be probable cause for prosecution, the action cannot be sustained. With the information that Kelton possessed, he had reasonable ground to believe

that a felony had been committed. He ought not, in justice and sound policy, to be mulct in damages and costs for endeavoring to detect and punish such offenses.''

"In the case of Raulston v. Jackson, 1 Sneed, 128, the court said: 'The law on this point is, and should have been so charged by the judge, that if the jury found from the proof that the defendant, at the time he instituted the prosecution, acted upon such a state of facts known to him, or derived from reliable information, as would induce a belief in the mind of a prudent, discreet man that the crime had been committed and by the person he was about to prosecute, he was not liable.

" 'The question is not whether the defendant is really guilty, but were there good and reasonable grounds for the prosecutor to believe he was . . .

" 'Instead of requiring direct evidence of the fact of the crime it may certainly often happen that no crime was in fact committed, and yet the prosecutor justifiable, because of the existence of probable or reasonable grounds to believe the criminal act had been done, and by the accused. If men were not allowed to act upon such grounds, crimes would often go unpunished for want of prosecutors. This action is only intended to apply to cases where a criminal accusation is made against an innocent man through malice, and in the absence of even a fair and reasonable probability of its truth.'

"In the case of Hall v. Hawkins, 5 Hump., 357, the court said: 'Probable cause is the existence of such facts and circumstances as would excite in a reasonable mind the belief that the person charged was guilty of the crime for which he was prosecuted; that is, acting upon the facts within the knowledge of the prosecutor, if a reasonable man would believe the party guilty of the crime charged, there would exist probable cause for the prosecution.' ''

The foregoing quotations from our authorities, in the main, the definition as to what constitutes probable cause under the holding of this court, and, with this rule of interpretation, it is but necessary to apply same to the facts of this case in order to determine whether this defense has been properly made out.

All of the foregoing authorities were cited in Spreich & Son v. McPherson, decided by this Court's opinion by Judge Heiskell, April, 1927.

The fact to be determined is, whether Wooley acted without the want of probable cause in procuring Mrs. Proctor's arrest. It may be that malice existed in the mind of Wooley at the time he procured the warrant granting that he became incensed at Mrs. Proctor when she jerked loose from him on the street when they started to-

wards Dillon's office, yet, if in the estimation of a rational and dispassionate mind there was probable cause for the prosecution, the action cannot be sustained, when we take into consideration the fact that Mrs. Dawson, the manager of the underwear department, came to Mr. Landry, the general superintendent, and informed Landry that there were irregularities in her department and that certain sales ladies were accusing Mrs. Proctor of improper conduct; thereupon, Landry directed Wooley to make a full and complete investigation. In the prosecution of this investigation Wooley procured written statements from three young ladies in Mrs. Proctor's department and from Miss Henderson who worked for the Federal Baking Co., and all four of these young ladies gave written statements to the effect that Mrs. Proctor, instead of selling a gown to Miss Henderson, gave it to Miss Henderson and wrote up a ticket as if she, Mrs. Proctor, had exchanged a gown, when in reality and in truth she had not; that Miss Henderson had been giving bread, rolls and cakes to Mrs. Proctor from the bakery and that Mrs. Proctor had been giving merchandise from Bry-Block Mercantile Co., to Miss Henderson. With the statement of Miss Henderson corroborated by the statements of Miss Taylor, Miss Pierce and Miss Friddel, the latter three trusted employees of Bry-Block Mercantile Co., and who, as appears from the record, bore Mrs. Proctor no animosity or had any motive for relating anything but the truth. We are constrained to hold that at the time Wooley instituted the prosecution acted upon such a state of facts known to him derived from reliable information, that to induce a belief in the mind of a prudent, discreet man that a crime had been committed and by the person he was about to prosecute. In addition to have the signed statements of these four persons who, without improper motive, implicated Mrs. Proctor as guilty of a crime. Wooley took the further precaution to submit the statements of these witnesses to the attorney, Mr. Williams, and to acquaint the attorney with the material facts of the case. The attorney advised that Mrs. Proctor, in his opinion, was guilty of larceny, and advised the procuring of a warrant for Mrs. Proctor.

Under this state of facts, we are of the opinion that Wooley acted with probable cause, and he is not liable. The agent not being liable, the principal is not liable.

In an action for malicious prosecution, the verdict should be directed for the defendant when it appears from undisputed evidence, that, before procuring the arrest and prosecution of plaintiff, the defendant endeavored, by the exercise of reasonable diligence, to make such inquiry and investigation of facts touching the probable guilt of the plaintiff as an ordinary prudent person would have made under the circumstances.

Granting that Wooley made a mistake after he had obtained advice of counsel in attempting to have Mrs. Proctor to visit detective Dillon's office and taking hold of Mrs. Proctor by the arm, these facts, errors and wrongs would not, in our opinion, change the question of probable cause or make it a case of prosecution for want of probable cause.

It results that the first and fourth assignments of error are sustained. The Court should have directed a verdict in favor of the defendants at the conclusion of all the testimony. The assignments of error of the defendants and the assignment of error of the plaintiff now become immaterial as we view this case, they are overruled. The judgment of the lower court it reversed and dismissed at plaintiff's cost for which execution will issue. Judgment will be entered against plaintiff and her surety on prosecution bond for the costs accrued in the lower court.

Heiskell and Senter, JJ., concur.