CITIZENS SAVINGS & LOAN CORPORATION v. W. R. BROWN.

Eastern Section. October 29, 1932.

Petition for Certiorari denied by Supreme Court, January 7, 1932.

Joe Frassrand and L. C. Harris, both of Chattanooga, for plaintiff in error.

J. H. Early, of Chattanooga, for defendant in error.

PORTRUM, J.  This is a suit for malicious prosecution in which the plaintiff below, W. R. Brown, recovered a judgment of $1000 against the Citizens Savings & Loan Corporation.  The prosecution was based upon a charge of forgery made against Brown by the prosecutor, Charles H. Schenck, an officer of the defendant bank corporation, and acting for it.  To the declaration the defendant plead not guilty, and also filed two special pleas, one of justification, and another, that the defendant acted upon the advice and counsel of its qualified attorney, after making the facts known to him.  The case went to trial upon these issues and a verdict was rendered in favor of the plaintiff, when the defendant filed a motion for a new trial.  It seems to us that the assignment there is no evidence to support the verdict, and the motion for a directed verdict should have been sustained, raises the material issue in this court.  It is not necessary to take up each of the motions based upon pleadings to the declaration, for under the assignment we must find evidence to support the action of the trial court in declining to direct a verdict upon each of the pleas.

In March, 1930, the plaintiff, Brown, made application to the defendant, which will be called "the bank," for a loan of $100; he was required to procure two joint makers to execute the note along with him, and he was given an application to be filled out by him and by the two joint makers, giving their names, address, occupation, employment, a family history, for what purpose the loan was to be used, and references as to their good standing.  At the same time a note was filled out and given to the applicant to be signed by himself and his joint makers, and he carried these papers away with him to his home at Cleveland, Tennessee.  Within a few days he returned to the bank with the application properly filled out by himself and three joint makers, and with the note signed by himself and the three joint makers.

Upon this information the loan was made.  The bank did not know the makers, with the exception of Brown, and did not require a witness to their signature.

The loan was payable in weekly installments and a few of these were paid, but default was made in May, 1930; the bank wrote a

letter to each of the joint makers, and two of these letters were returned unclaimed, W. F. Breeden, a joint maker, did not reply but called at the bank with the request to see the signature on the note, and after inspecting it he declared it to be a forgery. Soon thereafter the bank placed the note "with the legal department of the bank" or in the hands of its attorney for collection. The note provided for attorneys' fee, and the attorney wrote Mr. Brown, requesting immediate settlement of the principal, interest and fifteen percent as fee, and stated to him that Mr. Breedon had charged that his signature was a forgery. This letter, or another letter, was replied to in September by Mr. Brown, acknowledging his liability and his default in payment, but stated that he was out of work and would resume payment as soon as he could procure work. He also stated that Mr. Breeden's signature was not forged, and that he had witnesses to establish this fact.

Nothing was effectually done looking to the collection of this debt until March, 1931, when the officer of the bank conferred with the bank's attorney, and the attorney drew a State's warrant, charging Brown with the forgery and naming the officer as the prosecutor, then giving the blank warrant to the officer to take to the Justice of the Peace to be officially issued. When this was done it was placed in the hands of an officer of the law who arrested Brown and brought him to Chattanooga for trial. When Brown was arraigned before the Justice of the Peace and prosecutor's witness, Breeden, could not be located, a subpoena was then issued for Breeden and placed in the hands of an officer and the trial continued. Just why Breeden was expected to be at the trial without a subpoena, or without notice of the trial is not explained; we gather from the attorney's testimony that he issued the subpoena at the time the case was first called for trial. The case was continued twice in an effort to find Breeden, but, as counsel states, he had gone to parts unknown and could not be subpoenaed, and as a result the prosecution was dismissed. This suit was then instituted.

It is insisted that the prosecutor had probable cause for the institution of this criminal prosecution, and he did so without malice; and also that he acted upon the advice of counsel after laying the facts before his counsel, and he is protected by the advice. It is conceded that either is a good defense if established by the facts. Woolworth v. Connors, 142 Tenn., 681, 22 S. W., 1053; Dry-Block Mercantile Co. v. Proctor, 13 Tenn. App., 55.

Upon the first issue we are of the opinion that the facts made a case to be submitted to the jury. We think the facts justify the conclusion on the part of the jury that the defendant did not "endeavor, by the exercise of reasonable diligence to make such inquiry and investigation of the facts touching the probable guilt

of the plaintiff as an ordinary prudent person would have made under the circumstances.'' We will discuss these facts briefly: The defendant did not know the parties but acted upon the written application without so much as requiring a witness to the signature of the makers of the note. But the defendant had reason to believe that the application in reference to Brown was made out by him in his own handwriting; Breeden's application purported to have been made out by him, and upon inspection appears as a different handwriting from that of Brown's and his signature upon the application is the same as that appearing upon the note. Both of these parties are molders by trade, and in Brown's application he spelled the word ''moulder,'' while in Breeden's application the word was spelled ''molder.'' A man of less experience than a banker is required to take notice of these facts, and is not justified in concluding that Breeden did not fill out his application and sign the note, and a man exercising ordinary prudence would not conclude that Brown filled out Breeden's application and signed his name to the note, thereby committing forgery. Breeden may not have filled out the application, but there was no reason for concluding that Brown did in his name. A reasonable man would have concluded that either Breeden filled it out or some third person for him, but not Brown. Upon this paper and the declaration of Breeden the bank was not justified in concluding that Brown signed Breeden's name to the note, and thereby committed a forgery. Certainly it was incumbent upon it to make some further investigation. This investigation was available to it, for it could have had a judicial determination of the facts by bringing civil suit against the joint makers of this note, and the bank also had information from Brown that he had witnesses to establish that Breeden's signature was genuine. No inquiry was made of anyone who knew Breeden's signature, or of anyone in an attempt to discover a person who knew his signature. The bank was content to rely solely upon the declaration of Breeden. There was no endeavor to make inquiry or investigate the fact touching the probable guilt of the plaintiff.

We think the jury was also justified in concluding from the fact that the bank, through its agent, was actuated by malice in the institution of this suit. Its officer and the prosecutor virtually admits upon his examination that the criminal proceeding was instituted with the hope of exacting a settlement from the defendant charged with the felony. He was asked:

''What you wanted was the money? A. Sure, when we loan money we are entitled to get it back.

''If he had paid the money the thing would have been dropped? A. We are not running a charity organization.''

Can a banking institution use the processes of the criminal law

in connection with its "legal department," and drag an innocent man from his home and wife and children, throw him in jail in a distant city for the purpose of coercing him into the payment of a civil debt, and then escape because it was done without malice? Malice is defined as "the intent of one person to injure another."

Can the defendant escape for the reason that it acted upon the advice of counsel? When a person is derelict in his duty in making an endeavor to make inquiry and investigate the essential facts upon which the prosecution is based, and guilt predicated, then he is not in a position to lay the facts fairly before his counsel, and enable his counsel to wisely advise him. Therefore a party is chargeable with knowledge of all facts that he should have ascertained before he takes the advice of counsel. For this reason the defendant did not lay all the facts before his counsel, and is not entitled to rely upon the advice of counsel as an immunity. Furthermore, the defendant's counsel states that the bank official advised him that Breeden had stated that the signature was a forgery, and that he had not signed the note or authorized anyone to sign it for him. But the officer of the bank misinformed the bank's counsel as to what Breeden had said. The witness was asked:

"Did you tell Mr. Frassrand, attorney, that you had questioned him as to whether he authorized anyone else to sign the note? A. He didn't state that, merely said he didn't sign the note, positively didn't sign it."

The attorney testified:

"The explanation that Mr. Schenck made, that Mr. Breeden had been in to see him and denied that he had signed the note, and had not authorized anyone to sign his name to the note."

It is seen from this testimony that the witness misinformed the attorney.

Later in the examination the attorney testified that Breeden came to see him and informed him that he had not signed the note, or authorized anyone to sign the note for him. Now if the attorney is going to assume the duty of investigating the fact for his client, prior to advising him, then it is the attorney's duty to use the same care in investigating the fact as rested upon his client. What investigation did the attorney make? He was asked:

"If you had sued Breeden and he had plead non est factum and proved it was not his signature, that would have established the fact of this man's forgery? A. I was convinced of that without going to that trouble and cost.

"Q. Just because you were inclined that way? A. It was my judgment and that is the way the matter was handled."

We do not think the statement of Breeden was sufficiently convincing to justify counsel in acting upon it without a further investigation. There is an assignment of error that the judgment

is excessive. The trial judge was satisfied with the judgment, and we think it a serious matter to take a young man away from his home and his wife and children, to a distant city and throw him in jail, under a charge of forgery. As is argued he may find it difficult to live down this charge. One of the most abhorrent abuses is to prostitute the criminal processes in an endeavor to coerce the payment of a civil debt. And in determining the amount of the verdict we will not look too closely to the earning power of the plaintiff, or his pecuniary loss, but to his humiliation and the injury to his character, as well as the distress accompanying his arrest. We do not feel justified in disturbing the verdict of the jury. The verdict of the lower court is affirmed with cost.

Thompson, J., and Cassell, Sp. J., concur.